# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

DONNA LINDENAU,

    Plaintiff,

v.                                                           Case No. 8:17-cv-2997-T-33TGW

GARY S. LUNDEEN,

    Defendant.
_____/

## ORDER

Before the Court is Defendant Gary S. Lundeen's Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 10.) Plaintiff Donna Lindenau responded in opposition to the Motion (Doc. 19), and Lundeen filed a reply with leave of Court. (Docs. 21, 23.) The Court reviewed the filings, considered the supporting evidence submitted by the parties (Docs. 9, 19-1), and held a hearing. (Doc. 22.) Upon consideration, the Motion (Doc. 10) is GRANTED, and the Complaint is DISMISSED without prejudice for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).

## I.   INTRODUCTION

Lundeen is an Illinois attorney. (Doc. 2 ¶ 2.) In 2006, Ralph Falkenthal retained Lundeen to prepare the Ralph T. Falkenthal Declaration of Trust Dated the 1st day of the Month of December 2006. (*Id.* ¶ 4; Doc. 2-1 at 1.) This testamentary Trust devised $100,000 to each of Falkenthal's three children and the residue of the Trust to his wife, Joan Falkenthal. (Doc. 2-1 at 4.) When he executed the Trust, Falkenthal was a resident of Illinois. (Doc. 2 ¶ 4.) Lundeen included language so that the Trust "and the instruments created

1

thereby shall be construed and governed by the laws of Illinois in force from time to time."
(Doc. 2-1 at 8.)

After executing the Trust, Falkenthal moved to Florida, where he would remain until his death. (*See* Doc. 2 ¶ 5.) From there, he contacted Lundeen in 2012 to draft the First Amendment to the Trust. (*Id.* ¶ 5; Doc. 9 ¶ 19.) Falkenthal's wife had died, so the First Amendment reorganized the Trust to distribute assets to Falkenthal's children. (Doc. 2-2.) It devised an Illinois property to Falkenthal's son, and equally distributed the residue of the Trust to all three children. (*Id.*) Lundeen emailed the First Amendment from Illinois to Falkenthal in Florida, and Falkenthal executed it in Florida. (Doc. 9 ¶ 21.) The First Amendment was notarized by one person—no additional witnesses signed. (Doc. 2-2.)

In late 2014, Falkenthal again contacted Lundeen to draft a Second Amendment to the Trust. (Doc. 2 ¶ 6; Doc. 9 ¶ 22.) The Second Amendment replaced the Illinois property in the First Amendment with a property located in Sarasota, Florida. (Doc. 2-3.) It also transferred to Plaintiff Donna Lindenau property located at 6523 Copper Ridge Trail, in Bradenton, Florida, where Lindenau had lived with Falkenthal since 2010. (*Id.*; Doc 19-1 at 1, ¶ 2.) As with the First Amendment, the Second Amendment was emailed by Lundeen, executed by Falkenthal in Florida, and notarized by one person. (Doc. 2-3 at 2.) Again, no additional witnesses signed.[1]

Falkenthal died less than two months after executing the Second Amendment. (Doc. 2 ¶ 9.) Following his death, the Trust was opened for administration in Florida. The Trustee

---

[1] The appellate court in the underlying case noted that the Amendments were executed in the presence of two witnesses, but only one signed. *Kelly v. Lindenau*, 223 So. 3d 1074, 1075 (Fla. 2d DCA 2017).

filed a lawsuit to invalidate the First and Second Amendments. (Doc. 2 ¶ 14; *see generally* Doc. 10-1.) The Trustee alleged that the Amendments were invalid because they were not signed by two attesting witnesses, as required by sections 732.502(1)(c) and 736.0403(2)(b), Florida Statutes.[2] (Doc. 2 ¶ 14; Doc. 10-1.) Thus, the Copper Ridge property should pass to the Trust. Lindenau filed a counter-petition acknowledging the defect, but arguing the Second Amendment should instead be reformed to effectuate Falkenthal's intent to convey the Copper Ridge property to her. (Doc. 2 ¶ 15; Doc. 10-3.)

The trial court agreed with Lindenau, finding that the lack of two attesting witnesses was a mistake of law and the Second Amendment could be reformed. (Doc. 2 ¶ 16; Doc. 10-4.) The Trustee appealed, and Florida's Second District Court of Appeal reversed. *Kelly v. Lindenau*, 223 So. 3d 1074 (Fla. 2d DCA 2017). The court held that without two attesting witnesses, the First and Second Amendments were "invalid and unenforceable" and could not be reformed. *Id.* at 1077.

Following the unfavorable appellate decision, Lindenau filed this lawsuit in the Circuit Court for the Twelfth Judicial Circuit in and for Manatee County, Florida. (*See* Doc. 2.) Lundeen timely removed it here. (Doc. 1.)

Lindenau alleges that Lundeen committed legal malpractice by "neglecting to draft the Second Amendment according to § 732.503 and § 736.0402, Fla. Stat., failing to advise

---

[2] Section 736.0403(2)(b) provides that the "testamentary aspects of a revocable trust, executed by a settlor who is a domiciliary of this state at the time of execution, are invalid unless the trust instrument is executed by the settlor with the formalities required for the execution of a will in this state." The formalities for the execution of a will in Florida are embodied in section 732.502, which requires, in relevant part, that the testator's signature "must be in the presence of at least two attesting witnesses," who "must sign the will in the presence of the testator and in the presence of each other." §§ 732.502(1)(b), (1)(c). There is no real dispute that Lundeen was a domiciliary of Florida at least at the time of executing the Second Amendment, although that fact is not necessary to decide this motion.

Falkenthal regarding the execution requirements of Florida law, and by failing to ensure that the Second Amendment was executed by two attesting witnesses." (Doc. 2 ¶ 22.) Lundeen moved to dismiss the Complaint for lack of personal jurisdiction (Doc. 10), filing a declaration in support. (Doc. 9.) Lindenau responded with her own affidavit and additional evidence. (Docs. 19, 19-1.) Finding no direct conflict in the submitted evidence when construed in Lindenau's favor, the Court exercised its discretion to hold a non-evidentiary hearing.[3] (*See* Doc. 24.)

## II. STANDARD

Analyzing personal jurisdiction is a two-step process. First, the Court determines whether jurisdiction is appropriate under the forum state's long-arm statute. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005). If so, the Court then evaluates whether the defendant has minimum contacts with the forum state, such that jurisdiction does not offend "traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). If both inquiries are satisfied, the Court may exercise jurisdiction. If not, the case must be dismissed.

The personal jurisdiction analysis is also subject to a shifting evidentiary burden. The plaintiff must initially allege sufficient facts in the complaint to make out a "prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). To adequately allege jurisdiction, the plaintiff need not track the statutory language, but she

---

[3] *See U.S. S.E.C. v. Carillo*, 115 F.3d 1540, 1542 (11th Cir. 1997) (committing to the discretion of the trial court the decision to hold an evidentiary hearing); *Abramson v. Walt Disney Co.*, 132 F. App'x 273, 275 (11th Cir. 2005) (reviewing district court's decision not to hold an evidentiary hearing for abuse of discretion); *Walt Disney Co. v. Nelson*, 677 So. 2d 400, 403 (Fla. 4th DCA 1996) (observing that the trial court need not hold an evidentiary hearing unless the affidavits are not "factually reconcilable").

must at least allege "sufficient *facts* to make out a prima facie case of jurisdiction." *Estate of Scutieri v. Chambers*, 386 F. App'x 951, 956 (11th Cir. 2010). Conclusory allegations are "insufficient to establish a prima facie case of jurisdiction." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006).

If the plaintiff is successful in pleading a prima facie case of jurisdiction, the burden shifts to the defendant to challenge those allegations with evidence. *Mazer*, 556 F.3d at 1274. Once the allegations are challenged and rebutted, the plaintiff must substantiate the allegations in the complaint with an affidavit or other admissible proof, presenting enough evidence to withstanding a motion for directed verdict. *Id.*; *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

Where proof conflicts, reasonable inferences are drawn and the evidence construed in the plaintiff's favor. *Madara*, 916 F.2d at 1514. But, Florida's long-arm statute—as with all jurisdictional statutes—is construed strictly in favor of the foreign defendant challenging personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996). All doubts about the long-arm statute's applicability and the Court's jurisdiction are resolved in favor of the defendant and against jurisdiction. *Gadea v. Star Cruises, Ltd.*, 949 So. 2d 1143, 1150 (Fla. 3d DCA 2007).

### III. FLORIDA'S LONG-ARM STATUTE

Lindenau contends that Lundeen is subject to personal jurisdiction under § 48.193(1)(a)(2) of Florida's long-arm statute,[4] which provides:

---

[4] Lindenau argued in her Response that Lundeen was also subject to § 48.193(1)(a)(1), but she did not pursue this point at the hearing, arguing only that subsection (1)(a)(2) applies.

5

> A person . . . who personally . . . does any of the acts enumerated in this subsection thereby submits himself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> . . . .
>
> 2. Committing a tortious act within this state.

§ 48.193(1)(a)(2), Fla. Stat.

A defendant need not be physically present to commit a tortious act within Florida. *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002); *see Korman v. Kent*, 821 So. 2d 408, 410 (Fla. 4th DCA 2002). The question, however, is in what instance does out-of-state conduct constitute "committing a tortious act within this state."

The Eleventh Circuit interprets this subsection "to apply to defendants committing tortious acts outside the state that cause injury in Florida." *Estate of Scutieri*, 386 F. App'x at 955 (quoting *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1217 (11th Cir. 1999)); *Robinson v. Giamarco & Bill, P.C.*, 74 F.3d 253, 257 (11th Cir. 1996).[5] In *Robinson*, for example, Michigan attorneys negligently drafted and reviewed a Florida resident's will, trust, and follow-on testamentary documents. 74 F.3d at 255–56. The client died in Florida, and the will was admitted to probate and the trust administered in Broward County, Florida. *Id.* at 256. The trust and the estate incurred unexpected tax liability and consequently sued the Michigan attorneys for malpractice. *Id.* The Eleventh Circuit held the Michigan attorneys

---

[5] The Supreme Court of Florida has not addressed this question. *See Wendt*, 822 So. 2d at 1253 n.2 ("We do not decide the broader issue of whether injury alone satisfies the requirement of [§ 48.193(1)(a)(2)], as that issue is not the basis for this Court's jurisdiction."). However, the Court acknowledged—without condemning—the Eleventh Circuit's "broad construction" of § 48.193(1)(a)(2), "holding that the commission of torts out of state that cause an injury to an in-state resident satisfies Florida's long-arm statute." *Id.* (citing, among others, *Posner*, 178 F.3d at 1216–17; *Robinson*, 74 F.3d at 257).

"commit[ed] a tortious act within this state" because "[t]heir negligence has allegedly caused damages to an estate in Florida." *Id.* at 257.

*Robinson* controls on the question of the long-arm statute's applicability. Lundeen negligently drafted a trust amendment, allegedly causing damage to a third-party beneficiary of the Trust in Florida. (Doc. 2 ¶ 23.) *Robinson* and the "broad construction" the Eleventh Circuit traditionally affords § 48.193(1)(a)(2) subject Lundeen to Florida's long-arm statute. *See Xymogen, Inc. v. Digitalev, LLC*, No. 6:17-cv-869-Orl-31KRS, 2018 WL 659723, at *2 (M.D. Fla. Feb. 1, 2018).

Since Lundeen is subject to jurisdiction under Florida's long-arm statute, the analysis moves to whether Lundeen has sufficient minimum contacts with Florida to comport with due process. Considering the allegations and evidence submitted by the parties, he does not.

## IV. MINIMUM CONTACTS

Since *International Shoe*, the "touchstone" of personal jurisdiction "has been the question of whether a defendant has certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, 137 S.Ct. 1773, 1785 (2017) (cleaned up) (quoting *Int'l Shoe*, 326 U.S. at 316). The Court recently enumerated "three conditions for the exercise of specific jurisdiction over a nonresident":

1. First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State.

2. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct.

3. Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*Id.* at 1785–86 (citing *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011) (plurality op.); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 113–14 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78 (1985)).

These conditions are consistent with the three longstanding criteria the Eleventh Circuit uses to determine whether minimum contacts are present:

1. The contacts must be related to the plaintiff's cause of action or have given rise to it.

2. The contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws.

3. The defendant's contacts in the forum state must be such that he should reasonably anticipate being haled into court there.

*Scultpchair*, 94 F.3d at 631.

These criteria "ensure that a defendant will not be haled into a court solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 474–75 (cleaned up). A relationship between the defendant and a resident of the forum state is not enough. *Walden v. Fiore*, 134 S.Ct. 1115, 1123 (2014). Instead, the defendant *himself* must create a "substantial connection" with the forum state by "engag[ing] in significant activities within a State" or creating "continuing obligations" between himself and residents of the forum. *Burger King*, 471 U.S. at 475–76.

Lindenau argues that *Robinson* again controls the question of minimum contacts, just as it did the application of the long-arm statute. Lundeen counters that *Robinson* is

distinguishable because the Michigan attorneys always intended the will and trust to be administered in Florida and governed by Florida law. *See Robinson*, 74 F.3d at 257. In support, he points out that Falkenthal was an Illinois resident when he first approached Lundeen about drafting the Trust, and the Trust did not contain any Florida property until the Second Amendment, executed only two months before Falkenthal's death. Critically, Lundeen emphasizes the Trust's choice-of-law clause—unchanged by the Amendments—specifying that Illinois law always governed the Trust and any amendments.

Instead of *Robinson*, Lundeen contends this case more closely aligns with *Fleming & Weiss, P.C. v. First American Title Insurance Co.*, 580 So. 2d 646 (Fla. 3d DCA 1991). There, the out-of-state law firm sent an opinion letter to a Florida bank concerning a subordination agreement that would be used in Florida as part of a mortgage agreement to purchase Florida property, which allegedly caused harm in Florida. *Id.* at 647. The firm sent the letter "knowing and expecting" it would be used by the Florida bank "in transacting the Florida land loan." *Id.* at 648 (Nesbitt, J., dissenting). Nevertheless, the court held the firm's contacts with Florida insufficient to satisfy due process because the firm "did not solicit business in Florida, maintained no agent or property in Florida," and "stated . . . the opinion was based solely on New York law." *Id.* at 647–48.

That final point is a critical one. Like the opinion letter in *Fleming & Weiss*, Lundeen drafted the Trust so that Illinois law would govern. This is an "an indication" that Lundeen never intended to avail himself of Florida's laws and did not expect to be haled into court here. *Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd.*, No. 16-16187, 2018

9

WL 359998, at *8 (11th Cir. Jan. 11, 2018) (unpublished) (citing *Burger King*, 471 U.S. at 481–82).

Also similarly to *Fleming & Weiss*, Lundeen does not solicit business in Florida, has no office in Florida, is not licensed in Florida, owns no property in Florida, and has no other clients in Florida. And while the attorneys in *Fleming & Weiss* and *Robinson* knew and expected their documents would be used in Florida, Lundeen had no such guarantee when he drafted the Trust and the Amendments. (*See* Doc. 9 ¶¶ 18, 25.) His lack of expectation or intention to subject himself to Florida law distinguishes this case. *Accord Peavy v. Klausner*, No. 8:11-cv-0508-T-27EAJ, 2011 WL 3841633, at *4 (M.D. Fla. Aug. 3, 2011) (noting the *Robinson* court "emphasiz[ed] that the attorneys intended for these documents to be administered in Florida under Florida law" and distinguishing *Robinson* on that basis), *report and recommendation adopted*, 2011 WL 3841636 (M.D. Fla. Aug. 30, 2011). By including an Illinois choice-of-law clause and not expecting or intending the Trust to be invoked by Florida courts under Florida law, Lundeen did not purposefully avail himself of this forum, according to *Fleming & Weiss*.

This case instead comes down to whether Lundeen's act of drafting the First and Second Amendments "involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws." *Sculptchair*, 94 F.3d at 631. Because the Trust and Amendments were to "be construed and governed by the laws of Illinois" (Doc. 2-1 at 8), and Lundeen did not expect nor intend for the Trust to be administered in Florida under Florida law (Doc. 9 ¶¶ 18, 25), Lundeen cannot be said to have created a "substantial connection" with Florida sufficient to subject him to

jurisdiction. *See Fleming & Weiss*, 580 So. 2d at 647–48.[6] *Accord Newsome v. Gallacher*, 722 F.3d 1257, 1280 (10th Cir. 2013) (collecting cases supporting general agreement among federal courts that "representing a client residing in a distant forum is not necessarily a purposeful availment of that distant forums' laws and privileges").

V.  **CONCLUSION**

This is a close call; the line between *Robinson* and *Fleming & Weiss* is a thin one. When the question is close, however, courts are required to err in the defendant's favor and against jurisdiction. So it is here.

Accordingly, the Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 10) is GRANTED. The Complaint (Doc. 2) is DISMISSED without prejudice to Lindenau's ability to pursue this lawsuit in the appropriate forum. The Clerk is directed to CLOSE the file.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 5th day of March, 2018.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

---

[6] Because Lundeen lacks minimum contacts with Florida, the question of whether jurisdiction comports with "fair play and substantial justice" need not be reached. *Burger King*, 471 U.S. at 476.

11